COURT OF APPEALS
DECISION
DATED AND FILED

August 4, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP1325-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2022CF166

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

   PLAINTIFF-APPELLANT,

 V.

SHUE MOUA,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Lincoln County: ROBERT R. RUSSELL, Judge. *Reversed and cause remanded with directions*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The State of Wisconsin appeals an order dismissing with prejudice the charges that the State brought against Shue Moua.

The State argues that the circuit court erred by concluding that the 1,057-day delay between Moua's arrest and the dismissal of the charges against her prior to bringing her case to trial violated her constitutional speedy trial right. Because we agree with the State, we reverse and remand with directions for the court to reinstate the charges against Moua.

## BACKGROUND

¶2 On June 16, 2022, the State charged Moua with four counts of bail jumping, one count of criminal damage to property, one count of obstructing an officer, one count of possession of methamphetamine, and one count of possession with intent to deliver methamphetamine, stemming from an incident occurring on June 14, 2022.[1] The incident led to Moua's arrest and the discovery of methamphetamine in a changing room Moua had used during the booking process.

¶3 After her June 16, 2022 initial appearance, where Moua did not waive the time limits for holding a preliminary hearing, the circuit court held the preliminary hearing on June 24, 2022. At the preliminary hearing, the court bound the matter over for trial, the State filed an information, Moua entered not guilty pleas on all counts, and the court set the matter for a bond hearing. On the same day, Moua filed a speedy trial demand. At the July 6, 2022 bond hearing, the court denied Moua's bond motion and noted that the trial had to be scheduled 90 days from the June 24 date based on Moua's speedy trial demand. Because of the

---

[1] The probable cause section of the criminal complaint and the State's subsequent other-acts motion allege that the incident occurred on June 6, 2022, but the offense dates on the criminal complaint say June 14, 2022. This discrepancy does not affect our ultimate conclusion that Moua's constitutional speedy trial right was not violated. Thus, we use June 14, 2022, as the start date of our analysis, just as the parties do.

speedy trial demand, the court scheduled a final pretrial conference for August 24, 2022, and a trial for August 31, 2022.

¶4      At the August 24, 2022 final pretrial conference, the circuit court suggested rescheduling the matter for a motion hearing and a two-day trial because of the number of witnesses disclosed by the parties and the parties' multiple pretrial motions.  Moua's trial counsel objected to the court's suggestion, noting the speedy trial demand and asserting that Moua should be released on bond if the court adjourned the trial.  After resolving some of the parties' motions, the court told the parties it did not "have a good comfort level" with the case and that it hoped the parties would resolve some of the remaining pretrial motions prior to the next hearing date.  The court noted that if it did not "have a better feeling about" the case at the next hearing, it would "seriously consider amending bond" because it would be unable to set the matter for trial within the speedy trial time limit.  The court adjourned the hearing to August 29, 2022, to resolve the remaining pretrial motions and to discuss whether one day was sufficient for the trial.

¶5      Prior to the August 29, 2022 hearing, the State informed Moua's trial counsel that the Lincoln County Sheriff's Office had deleted the squad car camera video of the law enforcement officer who arrested Moua and transported her to the jail.  Moua's counsel moved to dismiss the case due to the destruction of exculpatory evidence.

¶6      At the hearing, the circuit court declined to rule on Moua's motion to dismiss without holding an evidentiary hearing, and it asked whether Moua was willing to waive her speedy trial demand.  Moua responded that she was not willing to do so and that she should be released from custody if the court

3

adjourned the trial scheduled for August 31, 2022. The State agreed that Moua should be released on a signature bond with the same conditions of bond that were previously ordered. The court removed the matter from the trial calendar and released Moua on a signature bond with the same conditions previously ordered. As for Moua's motion to dismiss, the parties agreed to a scheduling conference on October 13, 2022, during which the parties then scheduled an evidentiary hearing for December 13, 2022.

¶7      At that hearing, the State informed the circuit court that the State had recovered the deleted video and provided it to the defense. Because the video had been recovered, the court denied Moua's request to hold an evidentiary hearing on other issues regarding the deleted video. Noting that the speedy trial demand remained pending, Moua's counsel then told the court, "I think we need to schedule trial." When the court asked whether counsel wanted "a date right now" or to "put it on for scheduling," counsel responded, "Whatever the Court prefers." Noting counsel's statement that the case was "100 percent going to trial," but recognizing that "things happen and positions change," the court set the matter for a scheduling conference on February 9, 2023.

¶8      On January 26, 2023, the State filed an other-acts motion, seeking to admit evidence of how law enforcement found methamphetamine on Moua's person in a different case. At the February 9 scheduling conference, the parties scheduled a motion hearing for September 11, 2023, a final pretrial conference for October 9, 2023, and a trial for October 17, 2023. The circuit court also scheduled a hearing on the State's other-acts motion for July 10, 2023.

¶9      On April 11, 2023, Moua was charged with one count of possession with intent to distribute methamphetamine in the United States District Court for

4

the District of Minnesota.[2]  On April 14, 2023, the district court issued an order setting Moua's conditions of release, which included the following condition: "Travel shall be restricted to Minnesota unless approved by the supervising officer."

¶10  Because Moua was "currently residing in a halfway house" in Minnesota as "part of pretrial release" in the federal court case and her "ability to travel [was] limited," the circuit court granted Moua's trial counsel's request for Moua to appear by video at the July 10, 2023 motion hearing.  At that hearing, Moua's counsel asserted that she had not received any evidence supporting the State's other-acts motion, and she argued that without that evidence, the defense was unprepared to respond to the motion.  The court directed the State to provide the defense with any supplementary materials within 30 days, and it continued the motion hearing to September 11, 2023.

¶11  At that hearing, the circuit court gave Moua's trial counsel two more weeks to respond to the State's other-acts motion because she had not been able to review video evidence related to the motion that the State had turned over only a few days prior to the hearing.  During the court's discussion with the parties on scheduling a date for an oral ruling on the motion, Moua's counsel noted that Moua remained on federal pretrial release in Minnesota, and she asked "if rescheduling the trial is potentially something we want to do at this point?  There's no longer a hurry since she's out of our custody."  Counsel also noted that the

---

[2] Although the proceedings in Moua's federal court case are not part of the appellate record, the State has provided those records, made available through PACER (Public Access to Court Electronic Records), in its appendix.  We take judicial notice of those records, given that both parties rely on the dates and facts in those records when making their appellate arguments. *See* WIS. STAT. § 902.01(2)(b), (4) (2023-24).

October 17, 2023 trial date would likely be preempted by another "speedy trial or a prompt disposition," and the court noted that it had a "motion hearing that same day on a time-limits juvenile matter." The court then removed the trial date and set a scheduling conference for October 19, 2023, during which the parties set a final pretrial conference for April 25, 2024, and a trial for April 30, 2024.

¶12 On April 17, 2024, Moua, through her trial counsel, again requested to appear by video because Moua had been convicted the week before in her federal case. Although Moua was allowed to remain out of custody while awaiting sentencing, she could not leave Minnesota, and the sentencing was scheduled for early August. Moua's counsel also informed the circuit court that the parties would jointly request an adjournment of the April 30, 2024 trial and a status hearing in August after Moua's sentencing, noting that after "Moua is sentenced, there should be a swift resolution to this case." Counsel did not explain why a swift resolution was anticipated.

¶13 At the April 25, 2024 hearing, the State noted that the parties had agreed to adjourn the trial and believed that they could "come to a joint resolution and avoid bringing in a jury to have a trial, given the outcome of the federal case." The circuit court adjourned the trial and set a scheduling conference for May 30, 2024, at which the parties set a status hearing for August 19, 2024. At that hearing, the State noted that the case was "basically resting" on Moua's federal case and that both parties "want[ed] to delay a little further." Moua's trial counsel explained that Moua's sentencing in the federal case was scheduled for August 20, 2024. The court set the matter for a scheduling conference on September 19, 2024, to give the parties "time to sort this out and then advise the Court how we should schedule this matter."

¶14    The parties scheduled a status hearing for October 21, 2024.  At that hearing, the parties informed the circuit court that Moua's trial counsel was having difficulty locating and contacting Moua.  Moua's counsel said she did not know in which federal prison Moua was and that the State was "going to have to do an order to produce and try to get her here from federal custody because I have no ability to contact her now."  The State suggested setting the matter for another hearing so that it could locate Moua in order for her counsel to talk with her.  The court set the matter for a scheduling conference on December 5, 2024, giving the State additional time to locate Moua and "make arrangements to have her transported here for the next court hearing."

¶15    On November 5, 2024, Moua's trial counsel informed the circuit court that Moua was in a federal prison in Alabama, and the parties then scheduled a status hearing for January 23, 2025.  At that hearing, where Moua did not appear in any manner, the State noted that the parties "might be having a resolution for this case."  In response, Moua's counsel stated that Moua rejected the State's offer to resolve the case, noting that "the State would need to be able to produce Ms. Moua, and I don't know that they're going to from Alabama, and I don't know that that's a … smart use of resources, given the offer."  Counsel added that "the State really needs to determine if they want to continue to spend time and resources on this case, given [Moua's] federal sentence and where she's located."

¶16    The circuit court set the matter for a scheduling conference on March 6, 2025, to give the parties "time to discuss this matter one more time" and "advise the Court … what type of hearing we should schedule in this matter and what measures the State will take to bring the defendant to court."  At that conference, the parties set a motion hearing for May 5, 2025, a final pretrial conference for June 13, 2025, and a trial for June 17, 2025.

¶17    On April 30, 2025, Moua moved to dismiss her case with prejudice due to a violation of her constitutional speedy trial right. Moua argued that 1,043 days of delay were attributable to the State, given its failure to timely produce discovery, the parties' agreement to adjourn the case to "determine what was going to happen with Ms. Moua's federal case," and the State's failure to produce Moua when ordered to do so at the January 23, 2025 hearing. Given the length of the delay, Moua contended that the delay was presumptively prejudicial and that "no further analysis needs to be done to determine any specific prejudice in this excessive delay." In response, the State argued that Moua had waived her right to a speedy trial, either expressly or by conduct; that only 517 days were attributable to the State; and that Moua failed to show actual prejudice.

¶18    At the May 5, 2025 motion hearing, the circuit court addressed Moua's motion to dismiss. The court expressed that "every time this trial was adjourned, I did not sense any urgency in getting this on." The court asked the parties whether that lack of urgency was because they believed the case would resolve after the federal case was resolved. The State responded that it believed the case would resolve through a "non-litigated resolution," noting that Moua had rejected its plea offer after her sentencing in the federal case. Moua's trial counsel, in contrast, believed that if Moua "received a significant sentence in Federal Court, then this [case] would be dismissed," pointing to the attachment to her motion in which she asked the State whether it planned to dismiss the case given the sentence Moua received in the federal case.

¶19    The circuit court concluded that Moua was presumptively prejudiced by the delay and that the State had not overcome that presumption. It found that most of the delay was attributable to the State "because the adjournments were either requested by the Court or because the State was not objecting, demanding

that the trial date hold and not be adjourned." The court also found the length of the delay to be "extreme" and that the reasons for the delay included "placing blame on the State" and "blaming the State through actions by the Court." Given the foregoing, the court presumed that Moua was prejudiced, finding that it did not "have to talk about how this has affected her life" and that it did not "have to go into, well, was the defendant losing sleep, was she stressed out, did this [a]ffect her eating habits[.]" The court dismissed Moua's case without prejudice.

¶20 The circuit court subsequently clarified its ruling, concluding that Moua's constitutional speedy trial right was violated and that the violation required dismissal with prejudice. The State appeals.

## DISCUSSION

¶21 On appeal, the State argues that the circuit court erred by concluding that the majority of the delay was attributable to the State, that Moua was prejudiced as a matter of law due to the length of the delay, and that Moua did not need to show actual prejudice. Whether Moua's constitutional speedy trial right was violated is a question of law we review de novo. *See **State v. Ramirez***, 2025 WI 28, ¶29, 416 Wis. 2d 641, 22 N.W.3d 821. "We uphold the circuit court's factual and credibility findings unless they are clearly erroneous." ***Id.***

¶22 We apply, de novo, the four-factor balancing test set forth in ***Barker v. Wingo***, 407 U.S. 514, 530 (1972), to determine whether a defendant's constitutional speedy trial right was violated. ***Ramirez***, 416 Wis. 2d 641, ¶¶29-30. Those factors are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) prejudice to the defendant. ***Id.***, ¶30. We consider the totality of the circumstances particular to the case when balancing these factors. ***Id.***

9

## I.  Length of the delay

¶23    The first ***Barker*** factor functions as a trigger: "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." ***Barker***, 407 U.S. at 530. "Delays considered presumptively prejudicial and meriting further inquiry are generally those longer than one year." ***Ramirez***, 416 Wis. 2d 641, ¶31. Here, the State concedes that the 1,057-day delay between Moua's arrest on June 14, 2022, and the dismissal of her case on May 5, 2025, was presumptively prejudicial. This presumptively prejudicial delay triggers further review under the remaining three ***Barker*** factors, and it is considered "with the other factors and especially informs the prejudice inquiry." ***Ramirez***, 416 Wis. 2d 641, ¶32.

## II.  Reason for the delay

¶24    The second ***Barker*** factor examines whether a delay is attributable to the State, the defendant, or neither party. *See **Ramirez***, 416 Wis. 2d 641, ¶39. Under this factor, we consider the reasons for the delay and assign different weights to each category of reasons. ***State v. Urdahl***, 2005 WI App 191, ¶26, 286 Wis. 2d 476, 704 N.W.2d 324. A "delay" does not include the "time required for the orderly administration of criminal justice." ***Ramirez***, 416 Wis. 2d 641, ¶39 (citation omitted). That time includes "time that elapses due to pretrial requirements, such as filing the complaint; conducting the initial appearance, preliminary hearing, and arraignment; setting the trial date; and hearing pretrial motions," as long as "they occur 'expeditiously without delay.'" ***Id.*** (citation omitted). A delay caused by the defendant is not attributable to the State. ***Id.***

¶25    Delays by the State include not only those caused by the State itself, but also those caused by the court system. ***Id.***, ¶40. Delays attributable to the

State are assigned different weights: valid, neutral or deliberate. *Id.* Valid reasons are not weighed against the State and are "those considered 'intrinsic to the case itself,' such as adjournments required for competency evaluations or the absence of an essential witness." *Id.* (citation omitted). Neutral reasons are weighed against the State, but not heavily, and include "the State's negligence, overcrowded courts, inadequate judicial resources, and mounting caseloads." *Id.*, ¶41. Deliberate delays to hamper the defense or bad-faith conduct by the State are weighed heavily against the State. *See Barker*, 407 U.S. at 531; *Ramirez*, 416 Wis. 2d 641, ¶41.

¶26 The State argues that the second *Barker* factor does not weigh in Moua's favor because most of the delays should not count against the State. Specifically, the State asserts that 497 days are attributable to Moua and the remaining 560 days are either valid delays that do not weigh against the State or neutral delays that do not weigh heavily against the State. In response, Moua contends that at least 584 days are attributable to the State and should be weighed against it. Moua concedes, however, that none of the delays were deliberate or constituted bad-faith conduct such that they should be weighed heavily against the State.[3]

¶27 Both the State and Moua divide the delays into five periods. The first period—from June 14, 2022, the date of Moua's arrest, to August 29, 2022,

---

[3] As the State notes, there were several scheduling conferences that were not held on the record and for which there are no transcripts. These scheduling conferences include those held on October 13, 2022; February 9, 2023; October 19, 2023; May 30, 2024; September 19, 2024; December 9, 2024; and March 6, 2025. Both the State and Moua agree that without these transcripts, the record is unclear as to the reasons why the circuit court and the parties agreed to specific dates and why a trial could not be scheduled sooner, but that these unexplained delays should not weigh heavily against the State.

the date that the circuit court adjourned the first trial date—does not weigh against either party. The parties agree that this 76-day period does not constitute a "delay" for purposes of the speedy trial analysis because it relates to the orderly administration of criminal justice. *See* **Ramirez**, 416 Wis. 2d 641, ¶39. That period included the filing of the complaint, the initial appearance, the preliminary hearing, the filing of the information, the arraignment, Moua's speedy trial demand, the scheduling of the first trial, and the resolution of some pretrial motions.

¶28 The second period—from August 29, 2022, to April 11, 2023, the date Moua was charged in the federal case—weighs against the State, but not heavily. The State concedes that this 225-day period is attributable to its negligence in providing demanded discovery. Specifically, it relates to the deletion of the squad car camera video of the law enforcement officer who arrested Moua and transported her to jail, which resulted in Moua moving to dismiss the case based on the destruction of evidence. Because the circuit court refused to rule on the motion without an evidentiary hearing, it released Moua on a signature bond, took the matter off the trial calendar, and set a scheduling conference for an evidentiary hearing.

¶29 Prior to a December 2022 evidentiary hearing on the issue, the State recovered the video and provided it to Moua. Moua's trial counsel reminded the circuit court of the speedy trial demand and the need to schedule a trial, but she deferred to the court on scheduling. At the scheduling conference, the parties agreed to an October 2023 trial date and subsequently scheduled a hearing for the State's other-acts motion, which it filed in January 2023. Accordingly, this 225-day period is weighed against the State, but not heavily. *See* **id.**, ¶41.

¶30 The third period—from April 11, 2023, to August 20, 2024, the date Moua was sentenced in the federal case—does not weigh against the State. This 497-day period includes the time Moua was subject to travel restrictions in the conditions of release in her federal case and for which she appeared by video at the scheduled hearings in this case. This period also included rescheduling the July 10 and September 11, 2023 hearings to address the State's other-acts motion, for which the State had not provided the defense with relevant evidence; rescheduling the October 17, 2023 trial because Moua remained in federal pretrial release in Minnesota so, according to Moua's trial counsel, there was "no longer a hurry since she's out of our custody" and because the scheduled trial date would likely be preempted by other matters; and rescheduling the April 30, 2024 trial for after Moua's sentencing in the federal case, given that the parties believed—albeit for different reasons—that they could quickly resolve the case following the sentencing.

¶31 Although Moua agrees that some, or most, of the 497-day delay was due to the pendency of her federal case and attributable to her, she contends that at least 101 of those 497 days are attributable to the State. She argues that the period from July 10, 2023, to October 19, 2023, is attributable to the State's negligence in failing to provide "the necessary documentation of the acts that formed the basis of its other[-]acts motion" in a timely manner. Moua also contends that the travel restrictions in her conditions of release did not prevent the State from bringing her to trial in Wisconsin because she could have traveled with her supervising agent's permission.

¶32 We conclude that even if a portion of the 497 days is attributable to the State, it would not weigh heavily against the State, given that its negligence in failing to timely provide documentation supporting its other-acts motion is a

13

neutral reason for the delay. Furthermore, and importantly, it is clear that the resolution of Moua's federal case took precedence over this case for the 497-day period, which is why both parties agreed to adjourn both the October 17, 2023 and April 30, 2024 trial dates that were scheduled within this period. Given Moua's concession that the majority of the delay in this period was due to her federal case, the majority of this period, at least, is not attributable to the State and, therefore, does not weigh against the State.

¶33 The fourth period—from August 20, 2024, to January 23, 2025, the date that Moua rejected the State's plea offer—does not weigh against the State. During this 156-day period, the parties each had difficulty locating Moua in the federal prison system, the circuit court gave the State additional time to locate Moua and arrange for her transport, and Moua was eventually located in a federal prison in Alabama. We agree with the State that this delay was "intrinsic to the case itself." *See id.*, ¶40 (citation omitted). Although the delay during this period is technically attributable to the State, given that it made little sense for the court to schedule the matter for trial until Moua could be located, the reason for the delay is valid and it does not weigh against the State.

¶34 The fifth period—from January 23, 2025, to May 5, 2025, the date the circuit court dismissed the case—weighs against the State, but also not heavily. During this 103-day period,[4] the State did not produce Moua for the January 23

---

[4] Both the State and Moua maintain that this period spanned 102 days, but when that number is added to the remaining periods, the total length of the delay results in 1,056 days rather than the 1,057 days that both parties use as the total length of the delay. It appears the parties did not count the final day of the fifth period. We do so here and use 103 days in our analysis of the fifth period so that the total length of the delay is consistent with the parties' agreed-upon number of 1,057 days.

hearing, Moua rejected the State's plea offer, and the court set the matter for a scheduling hearing. It also then became apparent to both parties that they had different beliefs regarding how the case would resolve following Moua's sentencing in the federal case. The State agrees that this delay is, at worst, attributable to it for neutral reasons because of its failure to bring Moua to court, albeit a quite reasonable failure under the circumstances. Therefore, it does not weigh heavily against the State. *See id.*, ¶41.

¶35    In all, 76 days are not attributable to either party, 156 days are attributable to the State but caused by valid reasons that do not weigh against the State, 328 days are attributable to the State and caused by neutral reasons that do not weigh heavily against the State, and 497 days are attributable to Moua and do not weigh against the State. Thus, at most, the State's 328-day delay weighs against the State, but not heavily.

### III. Moua's assertion of her speedy trial right

¶36    The third *Barker* factor considers whether a defendant asserted his or her right to a speedy trial. *See Ramirez*, 416 Wis. 2d 641, ¶49. A defendant's assertion of the right "is entitled to strong evidentiary weight," *Barker*, 407 U.S. at 531, "because it 'is in itself probative of prejudice,'" *Ramirez*, 416 Wis. 2d 641, ¶49 (citation omitted). "Whether and how a defendant asserts his [or her] right is closely related to the other factors," as the "strength of [the defendant's] efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice." *Barker*, 407 U.S. at 531. The State may mitigate a long delay by showing that the defendant had, in reality, no interest in pursuing a speedy trial. *Ramirez*, 416 Wis. 2d 641, ¶34.

¶37 Here, Moua asserted her speedy trial right early in the case, following the State's filing of the information and her arraignment. The State argues that this court should place little weight on Moua's early assertion of her speedy trial right because Moua's subsequent conduct does not show that she desired to bring this case to trial. Moua concedes that her focus was on her federal case during the time it was pending, but she argues that she "regularly reminded the [circuit] court of her speedy trial demand" in this case and that her "willingness to set status hearings before trial is not inconsistent with a desire to take her case to trial."

¶38 Moua reminded the circuit court of her speedy trial demand at the August 24, 2022 hearing when the court sought to adjourn the trial to resolve the remaining pretrial motions. Moua also refused to waive the demand at the August 29, 2022 hearing after the court declined to rule on Moua's motion to dismiss. Moua again noted the speedy trial demand at the December 13, 2022 hearing, following the State's recovery of the deleted evidence, but Moua's trial counsel expressly deferred to the court on whether to schedule a trial or a scheduling conference, and the court noted that "things happen and positions change" when it opted for a scheduling conference.

¶39 Moua then became focused on her federal case and did not assert her speedy trial right or remind the circuit court of that right. At the September 11, 2023 hearing, it was Moua's trial counsel who suggested rescheduling the October 17, 2023 trial, given that Moua remained in federal pretrial release in Minnesota, there was "no longer a hurry since she's out of our custody," and other matters scheduled for that date would have taken precedence over Moua's trial. Both the State and Moua then requested to adjourn the April 30, 2024 trial until after her sentencing in the federal case due to their belief

that this case would resolve shortly after the federal sentencing. Thereafter, the parties did not schedule another trial until the March 2025 scheduling conference because of their difficulty in locating Moua in the federal prison system and their belief that they could resolve the case without a trial.

¶40 In sum, while Moua asserted her speedy trial right early in the case, she did not regularly assert that right at any point after her federal case began in April 2023. Thus, the third *Barker* factor does not weigh heavily in Moua's favor.

## IV. Prejudice

¶41 The fourth *Barker* factor examines the prejudice to the defendant as a result of a prolonged delay. *See Ramirez*, 416 Wis. 2d 641, ¶51. In assessing prejudice, we consider the following three interests of the defendant that the speedy trial right protects, with the third interest being the most serious: (1) "to prevent oppressive pretrial incarceration"; (2) "to minimize anxiety and concern of the accused"; and (3) "to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *Ramirez*, 416 Wis. 2d 641, ¶51.

¶42 "While 'the presumption that pretrial delay has prejudiced the accused intensifies over time,'" "courts generally do not hold a defendant has been prejudiced as a matter of law until the delay reaches five to six years." *Ramirez*, 416 Wis. 2d 641, ¶53 & n.8 (citation omitted). Furthermore, absent a showing of extraordinary circumstances, the dismissal of a case on speedy trial grounds prior to trial "is not warranted because the evidence of prejudice is speculative until after trial." *State v. Lemay*, 155 Wis. 2d 202, 214, 455 N.W.2d 233 (1990). Here, Moua concedes, and we agree, that the circuit court erred by presuming prejudice based on the length of the delay alone. She nevertheless argues that this court can conclude that Moua was prejudiced by the delay, pointing to her continued

assertion of her speedy trial right and the fact that the "delay stretched nearly three times beyond the period considered presumptively prejudicial for purposes of undertaking the *Barker* analysis."

¶43 Moua, however, fails to point to anything in the record showing any actual prejudice under the fourth *Barker* factor, including how the delay caused oppressive pretrial incarceration, caused her anxiety and concern, or impaired her defense. Given her mistaken belief, in the circuit court, that prejudice was presumed, she also did not make this showing in the circuit court. As to pretrial incarceration, we note that Moua was not in custody in this case for the entire 1,057-day period, but only for 76 of those days from June 14, 2022, to August 29, 2022, when she was released on a signature bond after the court adjourned the first trial date. Moua remained out of custody, but she was later incarcerated following her sentencing in the federal case in August 2024. As to the remaining two interests, Moua does not attempt to point to anything in the record suggesting the delay's effect on those interests. Because Moua fails to show any prejudice as a result of the delay, we conclude that the prejudice factor does not weigh in her favor.

## V. Balancing

¶44 On balance, the foregoing factors do not favor a conclusion that Moua's constitutional speedy trial right was violated. The 1,057-day delay does not weigh heavily against the State, given that almost half of that delay is attributable to Moua's federal case and the remaining half is attributable to the State for valid or neutral reasons. Despite Moua's speedy trial demand early in the case, she made no efforts to bring her case to trial once her federal case began.

Finally, Moua failed to make any showing of prejudice as a result of the 1,057-day delay.

¶45 Because Moua's constitutional speedy trial right was not violated as a result of the 1,057-day delay, we reverse the circuit court's order dismissing Moua's case, and we remand with directions to reinstate the charges against Moua.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2023-24).